1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF WASHINGTON

8

9   JUSTIN STURM,                          No. 1:15-cv-3034-MKD

10                  Plaintiff,             ORDER GRANTING PLAINTIFF'S
                                           MOTION FOR SUMMARY
11  vs.                                    JUDGMENT AND DENYING
                                           DEFENDANT'S MOTION FOR
12  CAROLYN W. COLVIN, Acting              SUMMARY JUDGMENT

    Commissioner of Social Security
13  Administration,

14                  Defendant.

15

16        BEFORE THE COURT are the parties' cross-motions for summary

17  judgment.  ECF Nos. 14, 15.  The parties have consented to proceed before a

    magistrate judge.  ECF No. 7.  Plaintiff is represented by D. James Tree.
18
    Defendant is represented by Alexis L. Toma.  This matter was submitted for
19

consideration without oral argument.  The Court has reviewed the administrative

record and the parties' briefing.  For the reasons discussed below, the Court grants

Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No. 15).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance."  *Id*. (quotation and citation omitted).  In determining whether the

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation.  *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."
42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe, or more severe, than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and

work experience.  *Id*.  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id*.

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010).  If

the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R. §

416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff protectively applied for child's insurance benefits (CDBR) on

October 6, 2011.  Tr. 210-18.  To prevail on this claim, Plaintiff must prove

disability began before age twenty-two.  42 U.S.C. § 402(d).  Plaintiff alleged

disability (as amended) beginning July 19, 2002, meaning the relevant period is

July 19, 2002 through July 18, 2006, the day before Plaintiff turned age twenty-

two.  Tr. 19, 42.  The application was denied initially and on reconsideration.  Tr.

97-99, 103-04.  Plaintiff appeared at a hearing before an administrative law judge

on May 1, 2013.  Tr. 38-76.  The ALJ issued an unfavorable decision on June 24,

2013.  Tr. 19-30.  On December 30, 2014, the Appeals Council denied review.  Tr. 1-5.

At step one, the ALJ found that Plaintiff did not work after onset July 19, 2002. Tr. 21.  At steps two and three, the ALJ found that Plaintiff suffers from attention deficit hyperactivity disorder (ADHD) and learning disorder, impairments that are severe but do not meet nor medically equal the severity of a listed impairment.  Tr. 21-22.  The ALJ found Plaintiff less than fully credible and able to perform work at all exertion levels, but with mental limitations.  Tr. 23-28.  At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 28.  At step five, relying on a vocational expert's testimony, the ALJ found there are jobs that Plaintiff can perform, including housekeeper, production assembler, hand packager, parking lot attendant, cook's helper, and others.  Tr. 28-29.  Accordingly, the ALJ found that Plaintiff was not disabled from onset until his twenty-second birthday.  Tr. 28-30.

## ISSUES

Plaintiff raises three issues for review:

1.  Whether the ALJ erred at step two by declining to assess Plaintiff's alleged physical impairment?

2.  Whether the ALJ erred in evaluating lay testimony of Plaintiff's parents?

3.  Whether the ALJ erred in assessing Plaintiff's credibility?

**DISCUSSION**

**A. Plaintiff's Physical Impairments**

Plaintiff contends that the ALJ committed reversible error at step two by failing to address and designate his foot impairment as severe and causing work-related limitations.  ECF No. 14 at 9-11.  The Commissioner admits the ALJ erred by failing to discuss the evidence of Plaintiff's foot impairment but alleges the error was harmless.  ECF No. 15 at 17-18.

At step two, an ALJ must determine whether a claimant suffers from one or more severe impairments.  20 C.F.R. §§ 404.1520(a)(4) (ii); 416.920(a)(4)(ii).  An impairment (or combination of impairments) is "severe" within the meaning of the Commissioner's regulations if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 416.920(c). Any physical or mental impairment, whether severe or non-severe, "must be established by medical evidence consisting of signs, symptoms, and laboratory findings" and "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1508, 404.1509; 416.908, 416.909.

Plaintiff testified regarding his foot pain (Tr. 45-46, 60-61); Plaintiff's mother testified regarding Plaintiff's foot pain and certain limitations she observed (Tr. 69-70); and a treating physician provided a diagnosis of "progressive arthritis due to biomechanical abnormalities" (Tr. 766), and opined on certain limitations (Tr. 759).

The error is harmful because the ALJ failed to consider whether Plaintiff's physical impairment in combination with his mental impairments affected his residual functional capacity to perform work activities. Having found Plaintiff to suffer from only severe mental impairments at step two, the ALJ necessarily failed to consider at step five how the combination of Plaintiff's physical and mental impairments affected his residual functional capacity to perform work. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (in finding at step two that plaintiff suffered from only one severe impairment, "the ALJ ignored substantial and undisputed evidence of Smolen's other impairments and failed to consider how the *combination* of those impairments affected Smolen's ability to do basic work activities.") (italics in the original).

On remand, the ALJ should consider and clarify the record regarding the ALJ's findings as to Plaintiff's foot ailment. Usually, "[i]f additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir.

2014), citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  This is such a case.  Because the ALJ failed to address medical and other evidence related to Plaintiff's physical impairment, these issues must be resolved on remand.

**B. Evaluation of Lay Testimony**

Plaintiff alleges the ALJ failed to properly credit the testimony of his parents, contending the ALJ erred by failing to discuss Plaintiff's mother's testimony, and by rejecting Plaintiff's father's testimony due to "hypothetical bias."  ECF No. 14 at 5-9.  Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account, and an ALJ is required to give germane reasons for discounting lay testimony.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).  The courts have not required an ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's testimony].").

### 1.  Plaintiff's Mother's Testimony

The ALJ did not address the Plaintiff's mother's testimony, thus, did not articulate germane reasons for rejecting her testimony.  Under the rule that lay testimony "cannot be disregarded without comment," *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), the ALJ arguably erred when he failed to explain his reasons for disregarding her testimony.  Contrary to Defendant's contention regarding harmless error (ECF No. 15 at 14), the Court finds that the testimony of Plaintiff's mother and father are not sufficiently similar to consider the failure to consider the mother's testimony harmless.  Because remand is required due to error at step two, on remand the ALJ should address the Plaintiff's mother's testimony.

### 2.  Plaintiff's Father's Testimony

The ALJ gave some weight to Plaintiff's father's statements in the third party function report, but discounted other statements, citing three reasons for discrediting certain statements.  Tr. 28.  First, the ALJ found Plaintiff's father's statement that Plaintiff could not follow instructions or pay attention well was not persuasive because the medical record did not support that level of cognitive limitation, since, for example, Plaintiff's teachers and psychologist noted that Plaintiff had minimal limitations in reading skills and Plaintiff enjoyed reading. Tr. 28.  Inconsistency between the medical record and lay testimony is a germane

reasons for rejection.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

Second, the ALJ noted an inconsistency between the assertion of Plaintiff's

cognitive limitation and both Plaintiff's and Plaintiff's father testimony that he

played online games, read, watched television, and fished whenever he has an

opportunity.  Tr. 28.  Incongruity in a lay witness's testimony constitutes a

germane reason for rejection.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

2007).  Third, the ALJ noted "the close relationship between [Plaintiff's father and

Plaintiff], and the possibility that [Plaintiff's father's] statements were influenced

in favor of the claimant in order to help him to qualify for disability benefits."  Tr.

28.  Plaintiff only challenged the third basis, contending it was based on

impermissible hypothetical bias.  ECF No. 14 at 8-9.

An ALJ may not rely exclusively on a lay witness's family relationship to

the claimant as a basis for discrediting the family member's testimony.  *See*

*Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness

is a family member cannot be a ground for rejecting his or her testimony.  To the

contrary, testimony from lay witnesses who see the claimant every day is of

particular value; such lay witnesses will often be family members.")  Although a

claimant's family members will frequently have an interest in the outcome of the

proceedings, an ALJ may not simply assume that their testimony is unworthy of

credence.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

2009).  Instead, to the extent the ALJ believes that a lay witness's relationship to the claimant is coloring his or her testimony, the ALJ must cite specific evidence from which actual bias could be inferred.  *See Valentine*, 574 F.3d at 694.  The ALJ cited no such specific evidence in this case.  On remand, the ALJ should assess Plaintiff's father's credibility without reference to a hypothetical bias in favor of his son if the father's observations and opinions are discounted.

### C. Adverse Credibility Finding of Plaintiff

Plaintiff contends that the ALJ improperly discredited his credibility.  ECF No. 14 at 12-18.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908; 416.927.  A claimant's statements about his symptoms alone will not suffice.  20 C.F.R. §§ 416.908; 416.927.  Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment.

1  *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be

2  objectively verified or measured."  *Id*. at 347 (quotation and citation omitted).

3      If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

4  must make a credibility determination with findings sufficiently specific to permit

5  [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

6  testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making

7  this determination, the ALJ may consider, inter alia: (1) the claimant's reputation

8  for truthfulness; (2) inconsistencies in the claimant's testimony or between his

9  testimony and his conduct; (3) the claimant's daily living activities; (4) the

10 claimant's work record; and (5) testimony from physicians or third parties

11 concerning the nature, severity, and effect of the claimant's condition.  *Id*.; *see also*

12 *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ may consider

13 many factors in weighing a claimant's credibility, including "(1) ordinary

14 techniques of credibility evaluation, such as the claimant's reputation for lying,

15 prior inconsistent statements concerning the symptoms, and other testimony by the

16 claimant that appears less than candid; (2) unexplained or inadequately explained

17 failure to seek treatment or to follow a prescribed course of treatment; and (3) the

18 claimant's daily activities.") (citation omitted).  If there is no evidence of

19 malingering, the ALJ's reasons for discrediting the claimant's testimony must be

"specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir.

2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff argues the ALJ erroneously found him not credible based upon his activities of daily living (ECF 14 at 12–13), lack of motivation to work (ECF 14 at 15-16), and failure to comply with treatment (ECF 14 at 16-18).

First, the ALJ found that Plaintiff's and his family's descriptions of his daily activities were inconsistent with Plaintiff's allegations of severely limiting symptoms.  Tr. 25.  The ALJ noted that Plaintiff had few limitations on his activities of daily living, in that Plaintiff and/or Plaintiff's father indicated that he could take care of his own hygiene, feed his pets, make simple meals, play online games on the computer daily, perform research on the internet, take care of the garden, do laundry, walk, ride in a car, get around, shop in stores and online, count change, watch television, fish from a boat, visit with others, and frequently went camping.  Tr. 25.  Moreover in 2002-2003, he was attending high school, from which he graduated.  Tr. 25.  The ALJ found that the described daily activities demonstrated that Plaintiff was not as limited as he alleged, and that he could perform work in accordance with the residual functioning capacity.  Tr. 25.  The

inconsistencies between Plaintiff's alleged limitations and his reported daily activities provided a permissible and legitimate reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958-59. Contrary to Plaintiff's assertion, an ALJ is not required to find that a claimant's daily activities are inconsistent with his alleged symptoms unless they consume a substantial part of claimant's day or are transferable to the workplace. There are two grounds for using daily activities to form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding that daily activities may be relevant to an adverse credibility finding either because they contradict a claimant's testimony or demonstrate abilities and skills that can easily transfer to a workplace setting). First, the daily activities may just contradict claimant's other testimony. *Id.*; *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Second, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639. Here, the ALJ indicated the ALJ used both grounds to discount Plaintiff's credibility. Tr. 25. The ALJ's determination that the daily activities are inconsistent with his alleged symptoms is supported by the record.

Second, the ALJ noted that Plaintiff's ongoing support from his family raised questions as to whether Plaintiff's unemployment was due to a lifestyle choice, as opposed to mental health problems, and that Plaintiff lacked motivation to work. Tr. 26. In support, the ALJ cited school records showing that Plaintiff had an excessive absentee record, which the medical documentation did not support Plaintiff's explanation for the absences. Tr. 26, 585, 638, 656, 673. His teachers stated that he was "very capable of achieving" when he was at school. Tr. 26, 673-74. At the hearing, Plaintiff testified that he missed school "sometimes because of my feet, sometimes I just really didn't want to go to be honest," but that when his father came home from work to take him to school, he would attend. Tr. 26, 59-60. The ALJ noted that when his mother handled him, Plaintiff got his way more often than not. Tr. 26, 59-60. The ALJ highlighted Plaintiff's treating physician's records, which indicated that the treating physician attributed Plaintiff's lack of employment to a lack of motivation. Tr. 26. The treating physician's notes indicate that Plaintiff lacked motivation to find work (*see, e.g.*, Tr. 720, 722, 724), and that the treating physician had recommended that Plaintiff contact various individuals to assist Plaintiff in career counseling or job seeking, which Plaintiff refused to do (Tr. 722, 724). The treating physician's notes state: "[Plaintiff] shows little motivation either to maintain medication compliance or to find work. I offered to allow him to make a phone call to Tom Hoisington

[regarding employment/skills] from my office and he declined.  To be fair, the family is aiding him in his procrastination by taking him camping frequently so that he does not have time to pursue work.  On the other hand, [Plaintiff] is very reluctant to get his driver's license and uses this as an excuse as to why he cannot stay at home alone and look for work." Tr. 724.  Finally, the ALJ noted that the record indicated Plaintiff had taken great advantage of his parents.  Tr. 26.  For example, Plaintiff and his parents stated that he lives with his parents, but they do not make him do any chores, his mother cooks and does his laundry.  Tr.  26.  However, when his parents are out of town, he is able to handle those chores and responsibilities, indicating an ability to do so.  Tr. 26.

Plaintiff contends that lack of motivation is an improper basis for discrediting Plaintiff given his mental health symptoms and that the ALJ improperly dismissed the possibility that Plaintiff's lack of motivation is a symptom of his impairments (ECF 14 at 15-16).  In fact, the ALJ relied on Plaintiff's own treating physician's statements that Plaintiff lacked motivation to find work, as well as other observations, testimony, and records as articulated in his order.

Third, the ALJ found that Plaintiff's mental symptoms were well controlled or stable when Plaintiff was compliant with treatment and noted that Plaintiff's

statements concerning the severity of his symptoms and limitations were

inconsistent with Plaintiff's less than full compliance with prescribed and

recommended treatment. Tr. 27. For instance, the ALJ noted that there were

instances were Plaintiff cancelled appointments with his treating physician, which

the ALJ found indicated he was satisfied with his prescribed medications and did

not seek treatment. Plaintiff's treating physician noted that Plaintiff and his

parents admitted regularly missing doses of his medication, which suggested to the

ALJ that neither Plaintiff nor his family believed his mental symptoms were as

severe as he alleged. Tr. 27. The ALJ noted that Plaintiff's treating physician

opined that Plaintiff was not motivated to comply with his medication. Tr. 27.

These inconsistencies between Plaintiff's alleged limitations and his lack of

compliance with treatment, provided a permissible legitimate reason for

discounting Plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

Cir. 2008). Contrary to Plaintiff's assertion, the ALJ did not chastise Plaintiff for

not seeking rehabilitation for his mental impairment, the ALJ noted that Plaintiff

sought medical treatment, but did not comply with the treatment recommendation

of taking medications on a regular basis as prescribed by his treating physician.

The ALJ's reasons were adequately supported by the record.

However, on remand, the ALJ should consider Plaintiff's credibility with respect to the alleged foot impairment. In addition, in the assessment of step two, the ALJ made a factual error, stating: "He [plaintiff] also testified that he went to Perry Technical Institute and learned web page design." Tr. 23. This statement is contrary to the record. Plaintiff stated that he went for an interview regarding the web design program, but did not attend the school. Tr. 44, 62.

The Court cannot determine whether this error when corrected will change the assessment of Plaintiff's credibility. The ALJ should reassess credibility on remand after considering the evidence of physical impairments and limitations at step two, and the lay testimony.

There are outstanding issues to be resolved with respect to physical limitations, consideration of lay testimony, and credibility. *See Smolen*, 80 F.3d at 1292 (remand for additional proceedings appropriate where outstanding issues unresolved). On remand, the ALJ may call a medical expert to assist in (1) interpreting the objective medical evidence presented, and (2) assessing Plaintiff's impairments in combination. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The Court wishes to express no opinion as to what the ultimate outcome on remand will or should be. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("[Q]uestions of credibility and resolution of conflicts in the testimony are

functions solely of the Secretary").

## CONCLUSION

After review the Court finds the ALJ's decision is not supported by substantial evidence and contains harmful legal error requiring reversal.

**IT IS ORDERED**:

1. Plaintiff's motion for summary judgment, **ECF No. 14**, is **granted** and the matter is remanded to the Commissioner for additional proceedings consistent with this decision and pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment, **ECF No. 15**, is **denied**.

3. An application for attorney fees may be filed by separate motion.

The District Executive is directed to file this Order and provide a copy to counsel. Judgment shall be entered for plaintiff, and the file **CLOSED**.

DATED this 17th day of February, 2016.

_s/Mary K. Dimke_

MARY K. DIMKE

UNITED STATES MAGISTRATE JUDGE